# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Arun Patel, et al.,<br><br>Defendants. | No. CV-16-00234-TUC-RM (BPV)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is a Motion for Summary Judgment ("MSJ") filed by Plaintiff J & J Sports Productions, Inc. (Doc. 28). Defendants have filed a Response (Doc. 30) and Plaintiff has filed a Reply (Doc. 31). For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review of the record, grant Plaintiff's Motion for Summary Judgment with regard to liability under 47 U.S.C. § 605, and award Plaintiff $9,000 in damages.

**I.     Factual and Procedural Background**

Plaintiff J & J Sports Productions, Inc., which is a closed circuit distributor of sports and entertainment programming, alleges that it "was granted the exclusive nationwide commercial distribution (closed-circuit) rights to '*The Fight of the Century*', *Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program*, telecast nationwide on Saturday, May 2, 2015 (this included all undercard-bouts and fight commentary encompassed in the television broadcast of the event. . . " ("the Program"). (Complaint (Doc. 1) at ¶16; *see also* Plaintiff's Statement of Facts ("PSOF") (Doc. 29) at ¶1). Plaintiff alleges that Defendants unlawfully broadcast the Program at El Dorado Inn

1 Suites & Bar located at 884 North Grand Avenue in Nogales, Arizona, ("El Dorado") in
2 violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605 (Count I),
3 and the Cable and Television Consumer Protection Act of 1992, as amended, 47 U.S.C.
4 §553, *et. seq.* (Count II). (*See generally,* Complaint). Plaintiff requests $110,000 in
5 statutory damages, in addition to attorneys' fees and costs, for violation of 47 U.S.C. §
6 605, and $60,000, in addition to attorneys' fees and costs, for violation of 47 U.S.C. §
7 553. (Complaint at 9).

**II. Motion for Summary Judgment**

**A. Standard**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once satisfied, the burden then shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (internal citation marks and citation omitted). *See also* Fed.R.Civ.P. 56(c). The nonmovant's evidence is presumed true and all reasonable inferences are to be drawn in the light most favorable to that party. *Eisenberg v. Insurance Co. of North Amer.*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Villiarimo v. Aloha Air, Inc.,* 281 F.3d 1054, 1065 n. 10 (9th Cir. 2002). Additionally, at the summary judgment stage, "a 'judge's function'… is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, __ U.S. __, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson,* 477 U.S. at 249).

Only disputes over facts that might affect the outcome of the suit will prevent the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. Thus,

if the record taken as a whole "could not lead a rational trier of fact to find for the nonmoving party," summary judgment is warranted. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir.2006) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). If the burden of persuasion at trial would be on the nonmoving party, the movant may carry its initial burden of production under Rule 56 by producing, "evidence negating an essential element of the nonmoving party's claim or defense…," or by showing, after suitable discovery, that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Companies, Inc. v. Fritz Cos.*, 210 F.3d 1099, 1105-1106 (9th Cir. 2000).

### B. Undisputed Facts

In responding to Plaintiff's Motion, Defendants do not controvert any of the facts asserted by Plaintiff, nor do Defendants submit their own statement of facts. Accordingly, Defendants are deemed to have admitted the validity of the facts contained in Plaintiff's statement. *See Kizzee v. Walmart, Inc.,* 2011 WL 3566881, *2 (D. Ariz. Aug. 15, 2011) (Nonmovant "did not file a controverting statement of facts. As a result, [movant's] statement of facts is deemed admitted." (citing LRCiv. 56.1(b) of the Rules of Practice of the U.S. District Court for the District of Arizona).

Plaintiff submits the affidavit of its President, Joseph M. Gagliardi, who states, among other things, that J & J Sports Productions, Inc.,

> purchased and retains the exclusive commercial exhibition (closed circuit) licensing rights to…[the Program]….At no time did J & J Sports Productions, Inc. sublicense the Program to Defendants Arun Patel, individually and d/b/a El Dorado Inn Suites & Bar and/or Naspp, Inc., an unknown business entity d/b/a El Dorado Inn Suites & Bar (hereinafter "Defendants"); moreover, as J & J Sports Productions, Inc. purchased and retains the exclusive commercial distribution rights, no other company was authorized to transmit the Program to Defendants. In other words, the Program was legally available to commercial establishments, including those in Arizona, only through an agreement with Plaintiff.

(PSOF, Gagliardi Aff. at ¶¶1, 3 *see also id.* at internal exh. 1 ("Closed Circuit Television License Agreement" re the Program). Mr. Gagliardi goes on to explain that the Program

- 3 -

> contained several televised under-card bouts and color commentary, along with the main event between Mayweather, Jr. and Pacquiao. As set forth within the sworn affidavit of Clifford Scheidegger, the undercard event between Vasyl Lomachenko and Gamalier Rodriguez (which was part of the Program herein), was observed as being unlawfully exhibited by the establishment doing business as El Dorado Inn Suites & Bar. At no time did El Dorado Inn Suites & Bar ever lawfully license the program from J & J Sports Productions, Inc. for such a purpose.

(PSOF, Gagliardi Aff. at ¶7). The commercial fee to broadcast the Program lawfully for an establishment the size of the El Dorado was $3,000. (*Id.* at ¶8 (citing internal exh. 2 (rate card)).¶

At all relevant times, Defendant Naspp, Inc., owned and operated the El Dorado, and Defendant Arun Patel served as the President, Treasurer and Director of Naspp, Inc. (PSOF at ¶¶ 3, 5 (citing Defendants' First Amended Answer (Doc. 16) at ¶ 7; Riley Declaration, internal exh. 3)). The business license for the El Dorado was issued to Mr. Patel. (PSOF at ¶ 7 (citing Riley Declaration, internal exh. 6)). Mr. Patel also was the Licensee/Agent for the Arizona Department of Liquor and Control Licenses for the El Dorado. (*Id.* at ¶ 6 (citing Defendants' First Amended Answer at ¶8; Riley Declaration, internal exhs. 4, 5)). Defendants also admitted in their First Amended Answer that at the relevant time, Mr. Patel managed the El Dorado and he had a financial interest in that business. (*See* PSOF at ¶¶ 8, 9 (citing Defendants' First Amended Answer ¶¶ 9, 12)). Defendants also admitted that they ordered the Program from Dish Network and received the Program via satellite Service. (PSOF at ¶15 (citing Defendants' First Amended Answer at ¶ 19; Riley Declaration, internal exh. 1 (Defendants' Responses to Plaintiff's Request for Admissions ("RFA")), Nos. 8, 25)). Defendants paid a residential fee of $89.99 to the Dish Network for the Program. (PSOF at ¶16; *see also* Riley Declaration at ¶10 & internal exh. 7; *see also* Riley Declaration, internal exh. 2 (Defendants' Responses to Plaintiff's First Set of Special Interrogatories" ("Responses to Interrogatories") at No. 10 (Defendant "Patel pays for Dish Network for his living quarters at the hotel.")). The El Dorado has commercial accounts with the telephone, electric, gas, and water companies. (PSOF at ¶20 (citing Riley Declaration, internal exh. 1 at Nos. 47-50)).

Plaintiff submits affidavits from investigators Gary W. Turner and Clifford Scheidegger to support its allegation that the Program was broadcast at the El Dorado. (*See* PSOF, "Declaration of Affiants", internal exhs. 1 (Turner Aff.), 2 (Scheidegger Aff.)).

Mr. Turner states that he arrived at the El Dorado on May 2, 2015 at approximately 5:55 PST. (PSOF, Turner Aff. at 1). He did not see any "overt advertising" about the Program in the hotel lobby and when he "asked about the fight[,]…a female that I would later see working as the bartender confirmed they were showing the fight and directed me to the lobby counter where I paid a male a ten dollar cover charge for myself and ten dollars for my companion." (*Id.*) Mr. Turner received two red tickets as proof of payment and entered the bar area. (*Id.*). Mr. Turner surreptitiously recorded a portion of the telecast. (*Id.* at 2). He left the bar at approximately 6:27 p.m. (*Id.*). During the time he was there, Mr. Tuner observed up to 13 people in the bar. (*Id.*). Mr. Turner also described the size and general lay out of the bar, including available seating. (*Id* at 1-2*.*). He was unable to locate satellite dishes that may have been used in showing in the fight. (*Id.* at 2).

Like Mr. Turner, Mr. Scheidegger and his companion each paid a $10.00 cover charge to view the Program on May 2, 2015. (Scheidegger Aff. at 1) "The tickets were being sold by the owners, who were running the front desk of the Inn." (*Id.* (describing the owners)). Mr. Scheidegger observed four televisions, three of which were 30 inches in size and the fourth was approximately 50 to 60 inches. (*Id.*). Mr. Scheidegger watched the fight between Vasyl Lomachenko and Gamalier Rodriguez before leaving the establishment. (*Id.; see also* Gagliardi Aff. at ¶ 7 (the Lomachenko/Rodriguez fight was part of the Program)). According to Mr. Scheidegger, the bar could hold about 50 to 60 people, and he counted up to 15 patrons between his arrival at approximately 6:11 p.m. and his departure at 7:01 p.m. (*Id.*).

Defendants received $230.00 in cover charges and $211.99 in beverage sales on May 2, 2012 and May 3, 2015 combined, for a total of $441.99. (PSOF at ¶17; Riley

Declaration internal exh. 2 at No. 5)). Consistent with Mr. Scheidegger's observation, Defendants confirmed that four television screens were visible when the Program was shown. (*Id.* at No. 8).

**C.     Discussion**

Title 47 U.S.C. § 553 and § 605 provide statutory protection against theft of communications like the Program *See DirecTV v. Webb,* 545 F.3d 837, 844 (9th Cir. 2008). "'Both § 553 and § 605 are strict liability statutes.'" *J & J Sports Prods., Inc. v. De La Cerda*, 2013 WL 5670877, at *4 (E.D. Cal. Oct. 16, 2013) (quoting *J & J Sports Prods., Inc. v. Delgado*, 2012 WL 371630, at *3 (E.D. Cal. 2012)); *see also J & J Sports Prods., Inc. v. Greathouse,* 2015 WL 717907, at *2 (D. Ariz. Feb. 2, 2015) (citations omitted).

Plaintiff acknowledges that "[t]here is a split of authority among the district courts as to whether a violation may implicate both 47 U.S.C. § 605 and 47 U.S.C. § 553." (MSJ at 4 (citations omitted)). The District Court for the District of Arizona has indicated that § 553 applies to cable broadcasts and § 605 applies to satellite broadcasts. *See e.g., Greathouse,* 2015 WL 717907, at *2; *Kingvision Pay Per View Ltd. v. Guzman,* 2008 WL 1924988, at *1 (D. Ariz. April 30, 2008). *Cf. DirecTV,* 545 F.3d at 844 (although not addressing the overlap in the statutes, stating: "that the 'communications' protected by § 605(a) include satellite television signals."). Courts presented with allegations that both § 553 and § 605 are potentially applicable "have held section 605 controls because it 'provides for greater damages and mandates attorney's fees.'" *Greathouse,* 2015 WL 717907 at *2  (analyzing claim under § 605) (quoting *Guzman*, 2008 WL 1924988, at *1) (other citations omitted).

Plaintiff contends that § 605 applies to this case. (*See* MSJ at 5). "'[T]o be held liable for a violation of [47 U.S.C. § 605], a defendant must be shown to have (1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff.'" *Greathouse,* 2015 WL 717907, at *2 (quoting *National Subscription Television v. S & H TV,* 644 F.2d

- 6 -

820, 826 (9th Cir.1981)). Plaintiff also points out that "[t]o hold an individual defendant liable in an individual capacity when there is also a corporate defendant (as in this case)…Plaintiff must [also] demonstrate that the defendant had 'a right and ability to supervise the violations and that he had a strong financial interest in such activities.'" (MSJ at 8-9 (quoting *J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.,* 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010); *G & G Closed Circuit Events, LLC v. Miranda,* 2014 WL 956235, at *4-*5 (D. Ariz. Mar. 12, 2014) (noting same test))).

As discussed above, Defendants do not controvert any of the facts asserted by Plaintiff, nor do they submit their own statement of facts. Accordingly, Defendants are deemed to have admitted the validity of the facts contained in Plaintiff's statement. *See Kizzee,* 2011 WL 3566881 at *2. Nonetheless, "[u]nder Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment only upon a showing that there are no genuine issues of material fact requiring a trial. The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (where movant's papers are themselves insufficient to support a motion for summary judgment, judgment may not be entered in favor of movant solely because the opposing party has failed to oppose the motion).

### 1. Liability

Here, Plaintiff has come forward with sufficient undisputed evidence to carry its burden under Rule 56. To establish "evidence of a satellite violation[]" in this case, Plaintiff cites to: (1) Defendants' First Amended Answer wherein Defendants admit that they showed the Program on May 2, 2015; and (2) Defendants' Responses to RFA Nos. 8 and 25 indicating that they ordered the Program from Dish Network and that the Program "was received in the [El Dorado] because satellite service television programming services the establishment." (MSJ at 4-5 (citing First Amended Answer at ¶ 19; PSOF,

Riley Declaration, internal exh. 1 at ¶¶ 8, 25 (capitalization omitted)). "The law does not require direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its very nature a surreptitious venture and direct evidence of actual interception may understandably be hard to come by." *DirecTV,* 545 F.3d at 844.

Defendants also admit, as shown in their Responses to the RFA, that the Program was shown at the El Dorado on May 2, 2015, and they did not pay Plaintiff the required licensing fee to show the Program. (Response at 2 (citing PSOF, Riley Declaration, internal exh. 1 at ¶¶ 3, 13)). Defendants' admissions, together with the statement from Dish Network, also support the conclusion that the Program was shown through a satellite service. Mr. Gagliardi's affidavit confirms that Defendants did not have permission to show the Program. Further, the Turner and Scheidegger affidavits also establish that the Program was in fact shown at the El Dorado. Finally, the undisputed facts show that Defendant Patel, who is an officer of Naspp, Inc., the holder of the liquor and business licenses for the El Dorado, and the manager of the El Dorado, had a right and ability to supervise the violation and that he had a strong financial interest in that activity. *See e.g. Joe Hand Promotions, Inc. v. Tickle,* 2016 WL 393797, at *13 (M.D. Pa. Feb. 2, 2016) (finding individual liability where the defendant who was an officer of the violating commercial establishment and held the liquor license). Moreover, Defendants concede that "[t]he facts establish that the Program was shown at Defendants['] place of business. On that basis Defendants do not dispute liability for a statutory strict liability matter." (Response at 2).

In light of the foregoing, the undisputed facts alone, and together with Defendants' concession as to liability, support entry of summary judgment in favor of Plaintiff as to liability under 47 U.S.C. § 605. It also follows that Plaintiff's Count II based on liability under 47 U.S.C. § 553 is subject to dismissal.

**2.      Damages**

Although the statute provides for actual damages, *see* 47 U.S.C. at

605(e)(3)(C)(i)(I), statutory damages of at least $1,000 and at most $10,000 may be awarded instead, 47 U.S.C. § 605(e)(3)(C)(i)(II). "Statutory damages are appropriate when actual damages cannot be easily proven." *J & J Sport Prods. v. Vargas*, 2013 WL 1249206, at *2 (D. Ariz. Mar. 27, 2013) (citation omitted). Here, Plaintiff requests an award of $9,000 in statutory damages. (MSJ at 11). Additionally, under the enhanced damages provision of the statute, the court may exercise discretion to increase the damages award by up to $100,000 if the defendant intercepted and published the communications "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests enhanced damages in the amount of $30,000, thus arriving at a total request for damages amounting to $39,000.[1] (MSJ at 11). The statute also provides that "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii). The statute further mandates the court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails[,]" 47 U.S.C. § 605(e)(3)(B)(iii), and "Plaintiff requests that it be granted 14 days from the entry of judgment to submit its request for costs and attorneys' fees[]" pursuant to LRCiv. 54.1 and 54.2. (MSJ at 16).

Defendants dispute that they are liable for damages in the amount Plaintiff seeks. (Response at 2-3 (characterizing Plaintiff's damages request as "gross overreach under the facts established here.")). Instead, Defendants assert that under the circumstances of the instant case, "an award of statutory damages in the amount of $1,000 is appropriate." (*Id.* at 3). Defendants also indicate that they will address Plaintiff's claim for attorneys' fees in response to any fee application Plaintiff submits.

To support their argument, Defendants cite to their denials to Plaintiff's RFA, which Defendants contend show that they "expected that someone else had taken care of

---

[1] Plaintiff originally sought $110,000 in statutory damages for violation for § 605. (*See* Complaint, at 9).

- 9 -

the licensing." (*Id.* at 2 (citing PSOF, Riley Declaration, internal exh. 1 at Nos. 2, 4, 5, 6, 44, 45, 46)). For example, when denying Plaintiff's request that Defendants admit that: "No one else ordered the [Program] for the ESTABLISHMENT from J & J Sports Productions, Inc., on your behalf[]", Defendants added to their denial that "Ramon Fuentes planned the event, was advertising for the event and defendants assumed that he had taken care of all legalities requirements to show the event." (PSOF, Riley Declaration, internal exh. 1 at No. 2)). The other RFA cited by Defendants provide essentially the same response when denying advertising the Program, or knowledge that, among other things, a commercial license to exhibit the event had not been obtained. Additionally, the record also reflects that when denying a RFA that "YOU are the manager of the ESTABLISHMENT", Defendants stated the following:

> Mr. Patel admits that he is the manager of the establishment, including the hotel and bar. However, on May 2, 2015, Mr. Fuentes had leased the restaurant from Naspp, Inc. and intended to use the fight as an event coinciding with his grand opening. Mr. Patel intended to provide Mr. Fuentes full use of the bar and restaurant for that event. However, when Mr. Fuentes failed to obtain approval to open the restaurant on May 2, 2015, he simply walked away from the property/restaurant/event. The advertising had been placed and Mr. Patel had very few options available but to provide what had been advertised. Mr. Patel was not in the bar at the time of the event, he was working at the front desk of the hotel.

(*Id.* at No. 30).

Plaintiff objects to Defendants reliance on the RFA, arguing that "denying a request for admission, does not establish the fact in Defendants' favor." (Reply at 3 (emphasis omitted)). Plaintiff stresses that "Defendants offer nothing to support their ultimate conclusions that they are unsophisticated, lacked knowledge, etc., and the evidence and authority offered by Plaintiff refutes any such suggestion." (*Id.* at 4). Plaintiff cites *Stormer v. Koon,* 2010 WL 1257592, at *1 (S.D. Ohio Mar. 30, 2010), which supports the proposition that a party opposing summary judgment cannot rely "solely on blanket denials to [the movants'] request for admissions. [The nonmovant]…cannot create a genuine issue of material fact by simply denying [the movants'] version of the facts." (*See* Reply at 3). Plaintiff also relies on *Ziller v.*

*Emerald Art Glass,* 2006 WL 2853976, at *2 (W.D. Pa. Oct. 4, 2006), where, in discussing the parties' cross-motions for summary judgment, the court rejected one of the parties' "occasional[] reli[ance] on [his] denial of [his opponent's] request for admissions and [his] response to … interrogatories", because neither was "an appropriate source" to support entry of summary judgment. (*See* Reply at 3). At issue in *Ziller* was the parties' noncompliance with local rules regarding the filing of separate statements of facts. *See Ziller,* 2006 WL 2853976, at *1. The court ultimately dismissed the cross-motions without prejudice to allow the parties to refile motions in compliance with the rules. *Id.* at *2-*3.

It is curious that the *Ziller* court stated that responses to interrogatories were not appropriate to support summary judgment given that Rule 56 at the time specifically identified "answers to interrogatories" as material that could support summary judgment. *See id.* at *2 (quoting Fed.R.Civ.P. 56(c)). Further, Plaintiff here has submitted Defendants' responses to interrogatories in support of Plaintiff's statement of facts. (*See* PSOF, Riley Declaration, internal exh. 2). In any event, under the current version of Rule 56, parties may support their assertions by citation to, among other specified documents, "particular parts of materials in the record including … admissions, interrogatory answers, or other materials[.]" Fed.R.Civ.P. 56(c)(1). "As indicated by the ending reference to 'other materials,' the particular forms of evidence mentioned in the rule are not the exclusive means of presenting evidence on a Rule 56 motion." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 10A *Federal Practice and Procedure* § 2721 at 380-81 (4th ed 2016). "When considering evidence proffered to avoid summary judgment, the Court focuses on content over form. *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003) ('At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.')." *Construction Dev. Servs. Inc. v. Wells Fargo Bank,* N.A., 2016 WL 3619028, at *4 (D. Ariz. May 10, 2016) (other citation omitted).

With regard to Defendants' citation to their responses to Plaintiff's RFA, Rule 36

governing requests for admissions provides that

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). The Court agrees with Plaintiff that a party opposing summary judgment cannot rely solely on "blanket denials[.]" *See e.g. Stormer,* 2010 WL 1257592, at * 1; *cf., Southern Ry. Co. v. Crosby,* 201 F.2d 878, 880 (4th Cir. 1953) ("It is manifest that a denial of the accuracy of a statement is not a denial of its essential truth and certainly a refusal to admit does not amount to a denial."). Here, however, Defendants do not rely on blanket denials. While the Court is inclined to consider Defendants' statements in their responses to Plaintiff's RFA, the statements do little to aid Defendants' case as discussed below.

In assessing damages, the Court is mindful that "[a]n award of damages should deter future conduct but not destroy the business." *J & J Sports Prods., Inc. v. Miramontes,* 2011 WL 892350, at *2 (D. Ariz. Mar. 14, 2011) (citing *Kingvision Pay-Per-View v. Lake Alice Bar,* 168 F.3d 347, 360 (9th Cir. 2009)). When "awarding statutory damages, courts in this district have considered factors such as the maximum capacity of the commercial establishment, the total number of patrons present at the time of the unauthorized showing, and the amount defendant would have paid if it had purchased the rights to show the broadcast." *Vargas,* 2013 WL 1249206, a *3.

Plaintiff has presented evidence that the area where the Program was broadcast could hold 50 to 60 people. While the investigators counted up to 15 people in the bar during the Program, ticket sales suggest that at least 23 people (apparently including the two investigators and 2 companions) viewed the Program. The Program was broadcast on four televisions, with the largest screen measuring approximately 50-60 inches. Given

that it would have cost $3,000 to show the Program had Defendants obtained proper licensing, a $1,000 award in statutory damages as urged by Defendants would not serve as any deterrent to future violations. However, in light of "the relatively small impact of [D]efendants' actions and the extremely low number of patrons in attendance, maximum statutory damages are not appropriate." *Miramontes,* 2011 WL 892350, at * 2 (awarding $2,700 in statutory damages where the fee to show the program was $1,400, the violating establishment had a maximum capacity of 250 people, and showed the program on two televisions to a total of up to 12 patrons). Upon consideration of the relevant factors, the District Court should award Plaintiff statutory damages in the amount of $6,000.

If it is established that Defendants acted unknowingly, damages may be reduced. *See e.g., J & J Sports Prods., Inc. v. Mendoza-Govan,* 2011 WL 1544886 at *6 (N.D. Cal. Apr. 25, 2011) (noting that ignorance of the law does not excuse liability but may reduce damages). While Defendants blame Mr. Fuentes for the violation, Defendants provide little basis as to the circumstances regarding Mr. Fuentes' alleged involvement. *Cf. Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). More importantly, the RFA cited by Defendants establish that they did in fact show the Program based only on an assumption that Mr. Fuentes "had taken care of all legalities…." (PSOF, Riley Declaration, internal exh. 1 at No. 2; *see also id.* at No. 30). While Mr. Patel felt he had "very few options available" but to collect the ticket fee and show the Program, which the record establishes was ordered on Mr. Patel's account, the fact remains that Mr. Patel had the option of not showing the Program when "Mr. Fuentes failed to obtain approval to open the restaurant…" and "simply walked away from the property/restaurant/event." (*Id.* at No. 30). Even drawing all inferences in favor of Defendants, a reasonable jury still could conclude that Defendants should have known that someone like Mr. Fuentes who had apparently failed to follow through on the plans and "walked away…" (*id.*), may not have properly arranged for the Program to be shown. Yet, the record is clear that Defendants took no action to confirm that proper

arrangements had been made to show the Program legally. The record also establishes that Mr. Patel knew that the Program had been advertised as showing at his establishment, (*id.*), and that the advertisement "required a cover charge[]" (*id.* at No. 20). The record establishes that Mr. Patel chose to collect the cover charge as advertised. (*See* PSOF, Declaration of Affiants, internal exhs. 1, 2; *see also* PSOF, Riley Declaration, exh. 2 at No. 5 (Defendants received $230.00 in ticket sales)). The record establishes that Defendants also sold beverages to patrons viewing the Program. (*See* PSOF, Riley Declaration, exh. 2 at No. 5). Thus, based on the undisputed evidence of record, there is no question that that financial gain was to be had by Defendants in ticket and beverage sales for showing the Program. Under these circumstances, there is no evidence to support reducing any damage award under §605(e)(3)(C)(iii). Further, for these same reasons, the record also supports the award of enhanced damages under § 605.

In deciding whether to award enhanced damages, "'[c]ourts generally consider factors such as repeat violations, substantial unlawful monetary gains, significant actual damages to plaintiff, advertising, cover charges, or charging premium menu and drink prices.'" *Vargas,* 2013 WL 1249206, at *3 (quoting *Miramontes,* 2011 WL 892350, at *2) (other citations omitted)). Here, there is no dispute that the Program was advertised, Defendants were aware that the Program had been advertised, Defendants sold tickets in the amount of $10.00 each, Defendants sold beverages, and Defendants willfully showed the Program. However, there is no evidence of repeat violations or premium drink prices. Further, although Defendants made $230.00 in ticket sales (at $10.00 per ticket) and $211.99 in beverage sales during the relevant time period, this does not support a conclusion that Defendants garnered substantial financial gain, given that the bar could hold up to 50 or 60 people but was filled to less than half capacity during the Program.

In supporting its request for $30,000 in enhanced damages, Plaintiff relies heavily upon *J & J Sports Prods., Inc. v. McCausland,* 2012 WL 113786 (S.D. Ind. Jan. 13, 2012), where the court awarded $10,000 in statutory damages and $30,000 in enhanced damages when the program at issue was shown on one television to 10-17 patrons in a

small geographic area and there was no evidence of a cover charge, advertising or that the defendant was a repeat violator. (MSJ at 16). However, the *McCausland* court also considered as an aggravating factor that the defendant had defaulted, which is not the case here. *See McCausland,* 2012 WL 113786, at *4 ("[T]he Court accords weight to the fact that Defendants have opted not to respond to Plaintiff's allegations in any fashion whatsoever. Not only does this failure to respond evince willfulness, it also precludes the Court from analyzing how a given damages award might impair the commercial viability of Defendants' business.") (footnote omitted). In contrast, in *Joe Hand Promotions v. Pinkhasov,* 2012 WL 3641451, *2 (D. Ariz. Aug. 24, 2012), also cited by Plaintiff, the court granted $10,000 in statutory damages and $5,000 in enhanced damages where the defendant collected a $5.00 cover charge, showed the program on multiple televisions, and 26 patrons, at most, viewed the program. Although *Pinkhasov*, like *McCausland,* also involved a defaulting defendant, it does not appear that the court considered the default as a factor when awarding enhanced damages. In *Vargas,* the court awarded $4,000 in statutory damages and $10,000 in enhanced damages where the program was shown to 150 patrons, and there was no evidence of any other aggravating factors. *Vargas,* 2013 WL 1249206, at *3 (unopposed motion for summary judgment). Other courts have noted that, in light of the need to deter unlawful activity, "the award of modest damages does not satisfy the purpose of the legislation[]" and "'that a firm judicial hand is required to stop this predatory behavior, which is outright thievery and to compensate the aggrieved appropriately.'" *J & J Sports Prods., Inc. v. Brazilian Paradise, LLC,* 789 F.Supp. 2d 669, 677 (D.S.C. 2011) (quoting *J.R.'Z Neighborhood Sports Grille, Inc.,* 2010 WL 1838432, *2). The cases illustrate the variability in awards in light of various relevant factors. Considering the relevant factors in this case, enhanced damages in the amount of $3,000 should be awarded to Plaintiff. A total damages award of $9,000 will both compensate Plaintiff and act as a deterrent against future violations.

Additionally, the Court should grant Plaintiff's request to file the appropriate

papers, in accordance with Fed.R.Civ.P. 54(d) and LRCiv. 54.1, 54.2 to obtain an award of its costs and attorneys' fees once its Motion for Summary Judgment is decided. *See e.g., Pinkhasov,* 2012 WL 3641451, at *2; *J & J Prods., Inc. v. Barrio Fiesta of Manila Restaurant,* 2012 WL 2919599, *2 (D. Ariz. July 2012).

### III. Recommendation

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review of the record, grant Plaintiff's Motion for Summary Judgment (Doc. 28) with regard to liability under 47 U.S.C. § 605, and award Plaintiff $9,000.00 in damages. Plaintiff's request for statutory and enhanced damages exceeding $9,000.00 should be denied. Additionally, Plaintiff should also be permitted to file the appropriate papers, in accordance with Fed.R.Civ.P. 54(d) and LRCiv. 54.1, 54.2 to obtain an award of its costs and attorneys' fees once the pending Motion for Summary Judgment is resolved.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **fourteen (14) days** after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 16-00234-TUC-RM.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to review.

Dated this 4th day of December, 2017.

_____
Bernardo P. Velasco
United States Magistrate Judge